**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

RANDY J. MATA,

      Plaintiff,

v.                                          No. CV 20-274 CG

ANDREW SAUL, Commissioner of the
Social Security Administration,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiff Randy J. Mata's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 26), filed January 14, 2021; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 32), filed March 26, 2021; and Mr. Mata's *Reply in Support of Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Reply"), (Doc. 33), filed April 8, 2021.

Mr. Mata applied for disability insurance benefits on May 11, 2015, and supplemental security income on May 18, 2015, alleging disability beginning January 24, 2013. (Administrative Record "AR" 13). In his applications, Mr. Mata claimed he was limited in his ability to work due to a back and neck condition, migraines, and an anxiety disorder. (AR 157). Mr. Mata's applications were denied initially on August 17, 2015, and upon reconsideration on March 23, 2016. (AR 13). Mr. Mata requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 11, 2019, before ALJ Jennifer M. Fellabaum. (AR 13, 42).

At the hearing, Mr. Mata appeared with his attorney Michael Armstrong and impartial Vocational Expert ("VE") Mary D. Weber. (AR 13). ALJ Fellabaum issued her decision on May 1, 2019, finding Mr. Mata not disabled at any time between his alleged disability onset date through the date of her decision. (AR 42). Mr. Mata then requested review of ALJ Fellabaum's decision before the Appeals Council, which was denied on January 27, 2020. (AR 1). Mr. Mata now challenges ALJ Fellabaum's May 1, 2019 decision denying his claim for disability insurance benefits and supplemental security income. *See* (Doc. 26).

In his Motion, Mr. Mata argues ALJ Fellabaum erred in two respects: (1) she failed to properly weigh the opinions of five of Mr. Mata's doctors, and (2) her determination of Mr. Mata's residual functional capacity ("RFC") is not based on substantial evidence because she failed to account for Mr. Mata's subjective allegations of pain and psychological symptoms, including somatoform disorder. (Doc. 26 at 1-2).

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Fellabaum failed to weigh the 2013 evaluation by Dr. Granados, the Court finds Mr. Mata's Motion is well-taken and should be **GRANTED**, and this case should be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

I.    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were

applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington*, 37 F.3d at 1439). However, "[t]he

possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520 (a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and

work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

In his applications, Mr. Mata claimed he was limited in his ability to work due to a back and neck condition, migraines, and an anxiety disorder. (AR 157). At step one, ALJ Fellabaum determined Mr. Mata had not engaged in substantial gainful activity since January 24, 2013, the alleged disability onset date. (AR 16). At step two, ALJ Fellabaum found Mr. Mata had the severe impairments of migraines/headaches, degenerative disc disease, depression, anxiety, cognitive disorder, somatoform disorder,[1] herpes viral iritis, and polysubstance abuse. (AR 16).

At step three, ALJ Fellabaum determined Mr. Mata's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 or 416.926. (AR 16). ALJ Fellabaum then found Mr. Mata had the RFC to perform "light work." (AR 18). In addition, ALJ Fellabaum found Mr. Mata was limited to occasionally stooping, crouching, kneeling, or crawling. (AR 18). She found Mr. Mata could never climb ladders, ropes or scaffolds, be exposed to unprotected heights or hazardous machinery, have concentrated exposure to extreme heat, or operate a motor vehicle for commercial purposes. (AR 18-19). She found Mr. Mata could frequently flex, extend, and rotate his neck, and could work with a noise level of moderate or less. (AR 19). Finally, with regard to Mr. Mata's mental RFC, ALJ

---

[1] "[A] group of disorders in which physical symptoms suggest[] physical disorders for which there are no demonstrable organic findings or known physiologic mechanisms, and for which there is positive evidence, or a strong presumption that the symptoms are linked to psychological factors; e.g., hysteria, conversion disorder, hypochondriasis, pain disorder, somatization disorder, body dysmorphic disorder, and Briquet syndrome." *Somatoform disorder*, Stedmans Medical Dictionary (27th ed. 2000) ("Stedmans").

Fellabaum found he could perform simple routine tasks with no fast paced production work, could tolerate occasional changes to the work setting, and could tolerate occasional interaction with the general public, co-workers and supervisors. (AR 19).

In formulating Mr. Mata's RFC, ALJ Fellabaum stated she considered his symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 404.1529, 416.929 and Social Security Ruling ("SSR") 16-3p. (AR 16). ALJ Fellabaum stated she also considered opinion evidence, consistent with the requirements of 20 C.F.R. § 404.1527 and 416.927. (AR 19). She concluded that while Mr. Mata's impairments could be expected to cause his alleged symptoms, the intensity, persistence, and limiting effects Mr. Mata described were not entirely consistent with the evidence in the record. (AR 18).

The opinion evidence consisted of reports and evaluations, among other things, from approximately a dozen doctors, including a panel of doctors who opined in an Independent Medical Examination ("Panel IME"). *See generally* (AR 37-40). In evaluating this evidence, ALJ Fellabaum afforded "little weight" to six of the doctors. *See* (AR 37-38). In particular, she found the opinions of state agency consultants Miller Logan, MD, and William H. Farrell, PhD, utilized outdated criteria, and they opined that Mr. Mata had no severe mental impairments. With regard to the opinions of Emily Eisenhauer, MD, and Matheen Khan, MD, that Mr. Mata was capable of medium work, ALJ Fellabaum found them to be unsupported by other evidence. (AR 37). She found the 2014 opinion of Tomas R. Granados, PsyD, inconsistent with the overall record. (AR 37-38). She found the opinion of the Panel IME inconsistent with the objective medical evidence. (AR 38).

ALJ Fellabaum afforded "limited weight" to two of Mr. Mata's doctors. She found that the opinion of Michael A. Gurule, MD, on Mr. Mata's physical limitations was deficient,

as it only addressed Mr. Mata's neurological functioning. (AR 37). With regard to the November 29, 2017 opinion of Ehab Ali, MD, Mr. Mata's treating physician, she explained that the medical evidence shows he primarily assisted Mr. Mata with medication management referrals, and she further found this opinion conflicts with other evidence. (AR 38). ALJ Fellabaum found that Dr. Ali's March 15, 2019 opinion also conflicts with his other opinions in evidence, and explained that it did not offer adequate medical findings to support his limitations. (AR 39).

ALJ Fellabaum afforded "some weight" to three of Mr. Mata's doctors, "no weight" to one doctor, and "little weight" to the one lay opinion provided. (AR 38-40) Specifically, she afforded some weight to the opinion of VanLin Chan, OD, regarding Mr. Mata's vision impairment, the opinion of the psychological consultative examiner Richard B. Madsen, PhD, and the opinion of the physical consultative examiner Philip Sosa, DO. (AR 38-40). She afforded no weight to the opinion of Susan B. Cave, PhD, as it is not stated in terms of functional limitations. (AR 38). Finally, ALJ Fellabaum granted little weight to the lay opinion of Mr. Mata's brother, John Williams. (AR 40).

At step four, ALJ Fellabaum found Mr. Mata incapable of performing his past relevant work as grinder operator, construction worker, garage mechanic, or heavy equipment operator. (AR 40). ALJ Fellabaum proceeded to step five, finding Mr. Mata to be a "younger individual" who has at least a high school education, and can communicate in English. (AR 41). ALJ Fellabaum found, given VE Weber's testimony and Mr. Mata's age, education, work experience, and assessed RFC, that Mr. Mata could perform other work as a merchandise marker, a routing clerk, or a silver wrapper. (AR 41). After finding Mr. Mata able to perform other work existing in significant numbers in the national economy, ALJ Fellabaum concluded he was "not disabled" as defined by 20 C.F.R.

§§ 404.1520(g) and 416.920(g). (AR 42).

## IV. Analysis

In his Motion, Mr. Mata presents two arguments. *See* (Doc. 26). First, he contends ALJ Fellabaum failed to properly weigh the opinions of Dr. Granados, Dr. Cave, and Dr. Madsen; as well as the opinions of Dr. Naimark and Dr. Swanda, which were included in the panel of four doctors who performed the Panel IME. *Id.* at 1. Second, Mr. Mata argues ALJ Fellabaum's determination of Mr. Mata's RFC is not based on substantial evidence because she failed to account for Mr. Mata's subjective allegations of pain and psychological symptoms, including somatoform disorder. *Id.* at 1-2. For these reasons, Mr. Mata requests that the Court reverse the Commissioner's decision and remand the matter for a new administrative hearing. *Id.* at 26.

In response, the Commissioner maintains that ALJ Fellabaum properly weighed the opinions of Dr. Granados, Dr. Cave, Dr. Madsen, Dr. Naimark and Dr. Swanda. (Doc. 32 at 11). The Commissioner argues that to the extent that ALJ Fellabaum did not assign a weight to Dr. Granados's 2013 report, there was no error "because the ALJ did not reject his conclusion that Plaintiff had mild cognitive slowing; moderate depression; significant apathy; and decreased motivation." *Id*. at 12. Next, the Commissioner argues that ALJ Fellabaum reasonably considered the opinions of Dr. Naimark and Dr. Swanda in the Panel IME. *Id.* at 14. To the extent that ALJ Fellabaum may not have properly weighed these opinions, the Commissioner argues there was no prejudice, as ALJ Fellabaum actually found Mr. Mata more limited in his ability to work than these opinions indicate. *Id.* at 12, 14.

The Commissioner next contends that ALJ Fellabaum reasonably discounted Dr. Cave's 2017 forensic report "because it did not contain any functional limitations" and

because it was "inconsistent with Dr. Cave's [own] examination findings." *Id.* at 16.

Similarly, the Commissioner argues that ALJ Fellabaum reasonably discounted Dr.

Madsen's opinion, as "the ALJ found that the 'full' record did not support marked limitations

and that Plaintiff was not honest with Dr. Madsen regarding his use of alcohol." *Id.* at 17.

Finally, the Commissioner argues that ALJ Fellabaum reasonably considered Mr. Mata's

pain and psychological symptoms, as ALJ Fellabaum discussed his testimony, his pain,

and his psychological symptoms at length in her assessment of Mr. Mata's RFC. *Id.* at 18.

As such, the Commissioner contends Mr. Mata's claim for disability was properly denied at

the administrative level. *Id.* at 24.

### A. ALJ Fellabaum's Weighing of Opinion Evidence

Mr. Mata first argues ALJ Fellabaum failed to properly weigh the opinions of Dr.

Granados, Dr. Cave, and Dr. Madsen, as well as the Panel IME opinions of Dr. Naimark

and Dr. Swanda. (Doc. 26 at 1). Specifically, he points out that ALJ Fellabaum "either

failed to weigh or rejected every neuropsychological or psychological opinion

chronologically leading up to Dr. Madsen's opinion," which she accorded only "some

weight." (Doc. 33 at 8); (AR 39). He contends that the mental limitations in ALJ

Fellabaum's assessment of Mr. Mata's RFC are therefore solely based on Dr. Madsen's

opinion. (Doc. 33 at 8). With regards to Dr. Madsen's opinion, Mr. Mata argues that ALJ

Fellabaum committed legal error "by picking and choosing amongst the moderate and

marked limitations determined by Dr. Madsen, by failing to weigh or rejecting opinions that

provide support and consistency to Dr. Madsen, and by developing an RFC that does not

account for the 'some weight' the ALJ accorded to even the moderate limitations in Dr.

Madsen's opinion." *Id.* at 9. In response, the Commissioner maintains that ALJ Fellabaum

properly weighed the opinions of Dr. Granados, Dr. Cave, Dr. Madsen, Dr. Naimark and

Dr. Swanda, and in the alternative, that any error was not harmful. (Doc. 32 at 11).

1. *Whether ALJ Fellabaum's Failure to Weigh Dr. Granados's June 2013 Neurological Evaluation of Mr. Mata Was Legal Error*

In determining Mr. Mata's mental RFC, ALJ Fellabaum discussed Dr. Granados's June 2013 neurological evaluation of Mr. Mata at length, noting that it was "consistent with mild cognitive slowing, moderate levels of depression, with significant apathy and decreased motivation." (AR 27). When discussing the weight she assigned to opinion evidence, however, she specifically omitted any discussion of the 2013 opinion, stating only that she granted "little weight to the November 12, 2014, neuropsychological evaluation of the claimant by Dr. Granados." (AR 37).

A medical opinion is defined as "statements from acceptable medical sources that reflect judgment about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Conversely, medical assessments that "go beyond purely medical findings to reach 'issues reserved to the Commissioner'—such as the claimant's RFC . . . and the ultimate question of disability— 'are not medical opinions.'" *Lakey v. Barnhart*, No. 04-7041, 127 F. App'x 455, 457 (10th Cir. April 5, 2005) (citing 20 C.F.R. § 404.1527(e)). Indeed, "the agency will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* (citations omitted).

Although an ALJ is not required to discuss every piece of evidence, she is required, at a minimum, to evaluate every medical opinion in the record and explain how much weight is assigned to each opinion and why. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)); *see also* 20 C.F.R. §404.1527(b)-(c); SSR 06-03p, 2006 WL 2329939. The Court must be able to not

only determine the weight the ALJ affords to a given medical opinion, but also to follow the ALJ's reasoning for that weight. *Guadagnoli v. Colvin*, 1:15-cv-0214 MCA/LF, 2016 WL 9777190, at *6 (D.N.M. June 16, 2016), *report and recommendation adopted*, 1:15-cv-0214 MCA/LF, 2016 WL 10179287 (D.N.M. July 8, 2016) (finding error where the ALJ's weight analysis left the Court "to guess at what overall medical evidence the ALJ relied on to come to [a] middle ground") (internal quotation marks omitted).

Every medical source opinion[2] should be weighed by the ALJ in consideration of the following "deference factors": (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d).

ALJs need not expressly discuss each of the six factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that they ultimately assign the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 F. App'x 880, 884 (10th Cir. 2007);

---

[2] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); *compare* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Because Mr. Mata filed his claims in May 2015, the prior regulations apply to this matter.

*see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

An ALJ's reasoning is not sufficiently specific if they merely state an opinion is unsupported by or inconsistent with the medical evidence without further explanation. *Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 F. App'x 788, 792-793 (10th Cir. 2008). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

In this case, the parties do not dispute that the findings and conclusions in Dr. Granados's 2013 neurological evaluation constitute medical opinions. *See generally* (Doc. 26); (Doc. 32). The parties also do not dispute that ALJ Fellabaum failed to weigh Dr. Granados's 2013 neurological evaluation. *Id.* However, the Commissioner disputes that this failure constitutes error. The Commissioner argues that to the extent ALJ Fellabaum did not assign a weight to Dr. Granados's 2013 report, there was no error because "the ALJ did not reject his conclusion that Plaintiff had mild cognitive slowing; moderate depression; significant apathy; and decreased motivation and Dr. Granados did not provide a medical opinion on Plaintiff's work-related limitations." (Doc. 32 at 12). The Commissioner cites *Duncan v. Colvin*, 608 F. App'x 566 (10th Cir. 2015), for the proposition that there can be no error where an ALJ did not reject the medical impairments found by a given medical source, and where there were no medical opinions regarding a

claimant's work-related functional limitations. (Doc. 32 at 12).

Mr. Mata argues that the factors under 20 C.F.R. § 404.1527(c)(1)-(6) support giving greater weight to both of Dr. Granados's opinions. (Doc. 26 at 17). He points out that Dr. Granados examined him on three separate days, and spoke with him in a follow-up phone call; Mr. Mata argues this could be construed as a treating relationship, instead of an examining relationship. *Id.* Mr. Mata also contends that this case is distinguishable from *Duncan v. Colvin* because other psychological examiners relied on, or opined in a way consistent with, the testing results and functional limitations in attention, memory, and processing speed in Dr. Granados's June 2013 neuropsychological opinion. (Doc. 33 at 5).

In the Court's own examination, Dr. Granados's 2013 evaluation is indeed a medical opinion. In particular, his evaluation contains notes and observations from his interview and examination of Mr. Mata on June 6 and June 7, 2013, the tests he administered, and his review of Mr. Mata's medical records and medical history. *See generally* (AR 506-514). As such, ALJ Fellabaum was required to weigh Dr. Granados's report accordingly. *See, e.g.*, *Chavez v. Saul*, 1:19-cv-1208 CG, 2020 WL 5255274, *5-6 (finding statements in a medical report to constitute medical opinions, and thus requiring the ALJ to weigh them accordingly).

This case is distinguishable from *Duncan v. Colvin*. In that case, as the district court below explained before it reached the Tenth Circuit, "the ALJ was silent as to the weight given to [the claimant's] treating orthopedic surgeon," but "accounted for the physical work-related limitations [the treating orthopedic surgeon] found to exist" in the assessed RFC. *Duncan v. Colvin*, 2014 WL 2004386, at *3-4 (N.D. Okla. May 16, 2014), *aff'd*, 608 F. App'x 566 (10th Cir. 2015). As the Commissioner notes, the Tenth Circuit reasoned that "[g]iven that the ALJ did not reject the medical impairments found by [the treating

13

orthopedic surgeon] and there were no medical opinions regarding [the claimant's] work-related functional limitations, there was no opinion on such matters by [the surgeon] for the ALJ to weigh." *Duncan*, 608 F. App'x at 574; *see* (Doc. 32 at 12).

Here, however, as explained more fully below, ALJ Fellabaum did *not* truly account for the mental impairments described by Dr. Granados. As such, applying the analysis in *Duncan v. Colvin*, she was required to assign the opinion a weight. *Id*. ALJ Fellabaum's failure to assign a weight to Dr. Granados's 2013 opinion deprives this Court of the ability to properly review her discussion of the opinion, and thus prevents this Court from determining whether her final decision was supported by substantial evidence. *See Clifton*, 79 F.3d at 1009; *Threet*, 353 F.3d at 1190. ALJ Fellabaum's failure to assign a weight to Dr. Granados's 2013 evaluation therefore constitutes error. The issue the Court must consider next is whether such error was harmful, mandating reversal and remand.

2. *Whether ALJ Fellabaum's Failure to Weigh Dr. Granados's 2013 Evaluation was Harmful Error*

Mr. Mata argues ALJ Fellabaum's failure to weigh Dr. Granados's 2013 evaluation constitutes harmful legal error because had she properly weighed Dr. Granados's 2013 evaluation, she may have altered the weight that she afforded other medical opinions in the record. (Doc. 26 at 18). The Commissioner argues Mr. Mata "cannot show that any error was harmful" because ALJ Fellabaum's "mental RFC assessment of simple routine tasks with no fast-paced production work and occasional work-setting changes and social interaction was more restrictive than Dr. Granados's conclusion that Plaintiff had no mental restrictions." (Doc. 32 at 13).

An ALJ's error may be considered harmless in exceptional circumstances, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have

resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In the context of analyzing objective evidence, the Tenth Circuit "allow[s] the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

Here, Dr. Granados found upon testing that Mr. Mata has "decreased processing speed" as well as depression with "somatic focus." (AR 512-513). This report is consistent with Dr. Granados's second neuropsychological evaluation in November 2014, wherein Dr. Granados found that Mr. Mata's cognitive processing speed remained "markedly" below expectation, and wherein he diagnosed Mr. Mata with major depressive disorder. (AR 501, 504). Several other doctors relied upon Dr. Granados's evaluation, including the Panel IME which included the opinions of Dr. Naimark and Dr. Swanda. *See*, *e.g.*, (AR 621, 674).

> a. *The Effect of the ALJ's Error on the Weighing of Other Opinion Evidence*

First, ALJ Fellabaum's consideration of the other medical source opinions may have been different had she properly weighed Dr. Granados's 2013 opinion. For example, ALJ Fellabaum afforded "little weight" to the opinion of the Panel IME, as she found it inconsistent with the objective medical evidence. (AR 38). However, Dr. Swanda states in the Panel IME that Mr. Mata's cognitive performance is "consistent with the results that were described by Dr. Granados in his examination of June 2013." (AR 682). ALJ Fellabaum may thus have afforded more weight to the Panel IME if she had properly weighed Dr. Granados's first evaluation.

Dr. Granados's 2013 evaluation is also consistent with his second

neuropsychological evaluation of Mr. Mata, in November 2014, wherein he found that Mr. Mata's cognitive processing speed remained markedly below expectation, and he diagnosed Mr. Mata with major depressive disorder. (AR 501, 504). ALJ Fellabaum afforded Dr. Granados's 2014 evaluation "little weight," despite its consistency with his earlier evaluation of Mr. Mata. (AR 37-40). ALJ Fellabaum may thus have afforded more weight to Dr. Granados's 2014 evaluation if she had properly weighed his earlier evaluation.

Comparing the two evaluations by Dr. Granados, it appears not only that Mr. Mata showed no improvement but that he was experiencing psychological decline, as Dr. Granados noted in 2014 that "greater degrees of psychological distress are reported on this evaluation." (AR 503). In June of 2015, Dr. Swanda similarly noted that Mr. Mata's symptoms have "shown worsening over time, instead of improvement." (AR 682). Despite the consistency between these evaluations, ALJ Fellabaum gave them "little weight." (AR 37-40). ALJ Fellabaum may have found otherwise had she properly weighed Dr. Granados's 2013 evaluation of Mr. Mata's limitations. This in turn may have affected her weighing of Dr. Madsen's opinion, which found Mr. Mata has several marked mental limitations. (AR 1325-1327).

Dr. Granados noted in his 2013 evaluation that Mr. Mata reported difficulties with concentration and short-term memory, that he appeared to be "unmotivated and indifferent about his decreased motivation to do things," and that his "interactions with his mother were abrupt and with marked irritability on his part." (AR 509-510). Dr. Granados also observed "a mild degree" of irritability more generally. (AR 510). The overall evaluation was consistent with "mild cognitive slowing, [and] moderate levels of depression, with significant apathy and decreased motivation." (AR 513). Dr. Granados also opined that

emotional factors contributed to Mr. Mata's decreased speed of cognitive processing. (AR 514).

Then, in his 2014 opinion, Dr. Granados found that Mr. Mata's cognitive processing speed "remained markedly below expectation." (AR 650). In the context of the 2013 opinion, Dr. Granados is indicating he found Mr. Mata's cognitive processing speed to be markedly below expectation during *both* his 2013 and his 2014 evaluations of Mr. Mata. *See* (AR 650). ALJ Fellabaum's failure to properly weigh both reports obscures the import of this finding in the second report. (AR 650).

Similarly, Dr. Madsen diagnosed Mr. Mata with "cognitive disorder, not otherwise specified," opined that Mr. Mata's ability to work is impaired due to, among other things, his "difficulties concentrating and with short-term memory." (AR 1321-1322). Dr. Madsen also found that his ability to work "will be impaired at a marked level." (AR 1322). ALJ Fellabaum, however, granted Dr. Madsen's evaluation only "some weight," because "the full record does not support marked limitations." (AR 39). ALJ Fellabaum may thus have afforded more weight to Dr. Madsen's evaluation if she had properly weighed Dr. Granados's 2013 evaluation.

### b. The Effect of the ALJ's Error on the RFC Assessment

Further, ALJ Fellabaum may have assessed Mr. Mata's mental RFC differently had she properly weighed Dr. Granados's 2013 opinion. In her decision, ALJ Fellabaum found he could perform simple routine tasks with no fast paced production work, could tolerate occasional changes to the work setting, and could tolerate occasional interaction with the general public, co-workers and supervisors. (AR 19). ALJ Fellabaum found Mr. Mata had a moderate limitation with regard to concentrating, persisting, or maintaining pace. (AR 18). If ALJ Fellabaum had properly weighed Dr. Granados's 2013 evaluation, she may have

afforded more weight to Dr. Madsen's opinion regarding whether Mr. Mata has marked limitations, resulting in a more restrictive assessment of Mr. Mata's mental RFC.

ALJ Fellabaum's mental RFC assessment is roughly consistent with this District's standard for accounting for moderate limitations in concentration, persistence or pace. *See*, *e.g.*, *Padilla v. Astrue*, 1:12-cv-0484 KBM, 2013 WL 12333489, at *5 (D.N.M. Jan. 7, 2013). Given the foregoing psychological evidence, however, a reasonable factfinder could conclude, for instance, that Mr. Mata was subject to marked limitations of concentration, persistence, or pace, which could have ruled out simple work. *Bowers v. Astrue*, 271 F. App'x 731, 733 (10th Cir. 2008) ("[s]imple work . . . can be ruled out by a vocational expert on the basis of a serious impairment in concentration and attention."). Mr. Mata's capacity for concentration, persistence, or pace is part of his RFC. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00E3; *see also Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979). The extent to which Mr. Mata can work, and the ultimate question of disability, must be determined in light of that restriction. *See* SSR 85-16, 1985 WL 56855, at *2.

### c. The Commissioner's Characterization of Dr. Granados's Opinion

Finally, the Commissioner argues that any error in ALJ Fellabaum's failure to weigh Dr. Granados's 2013 report was not harmful, as her mental RFC assessment of "simple routine tasks with no fast-paced production work and occasional work-setting changes and social interaction was more restrictive" than indicated by Dr. Granados, saying Dr. Granados concluded in his 2014 evaluation that "Plaintiff had no mental restrictions." (Doc. 32 at 13). This is, at best, a simplification of the evidence; in November 2014, Dr. Granados did opine that "[n]o ratable impairment related to neuropsychological functioning is considered to be present," and that "[n]o restrictions exist from a psychological

18

perspective." (AR 503, 505). However, in context he appears to be characterizing only the negative neuroimaging findings and a neurological evaluation which did not identify "focal neurological defects." (AR 503). For example, in the same report he also explains that "Mr. Mata perceives that his emotional state is *worsened* relative to the previous evaluation," and recommends a psychiatric consultation, a medication trial, and psychological treatment. (AR 503-504) (emphasis added).

ALJ Fellabaum was not entitled to pick and choose through Dr. Granados's 2014 opinion, "taking only the parts that are favorable to a finding of nondisability" in order to disregard his 2013 opinion. *Haga*, 482 F.3d at 1208. Instead, she was obligated to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. This explanation is especially important in the context of this case, where the claimant suffers from somatoform disorder. (AR 16). The very nature of somatoform disorder includes "the presence of symptoms . . . that are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder . . . " Diagnostic & Statistical Manual of Mental Disorders ("DSM") at 485 (4th ed. American Psychiatric Society, 2000); *see*, *e.g.*, *Sotelo v. Astrue*, 2:10-cv-456 CG, 2011 WL 13289791, at n.2 (D.N.M. Apr. 15, 2011). In other words, it is not necessarily true that ALJ Fellabaum's mental RFC was more restrictive than Dr. Granados's 2014 assessment; Dr. Granados noted very clearly in his second report that although Mr. Mata had "[n]o ratable impairment related to neuropsychological functioning"—apparently referring to the neuroimaging findings and the neurological evaluation—Mr. Mata's psychological symptoms created mental and emotional restrictions which required further treatment. (AR 503).

When evaluating allegations of pain, as here, the ALJ is required to consider "the possibility that psychological disorders combine with physical problems." *Sotelo*, 2011 WL 13289791, at *6 (quoting *Luna v. Bowen*, 834 F.2d 161, 166 (10th Cir.1987)). Dr. Granados's inability to detect a *physical* explanation for Mr. Mata's subjective symptoms in 2014 does not, as the Commissioner argues, enable ALJ Fellabaum to disregard his 2013 examination entirely; the ALJ herself found that Mr. Mata suffers from somatoform disorder. (AR 16). Somatoform disorder is a pain-related disorder that may tend to cause symptoms unsubstantiated by objective medical evidence, and which may be related to mental illnesses for which Dr. Granados *did* contemporaneously recommend treatment. *See* DSM at 485; Stedmans, *supra* at 5, n. 1; *Sotelo*, 2011 WL 13289791 at n.2; (AR 503-504).

Accordingly, Dr. Granados's 2013 evaluation is not only a medical opinion requiring ALJ Fellabaum's consideration, but also significant, probative evidence ALJ Fellabaum was required to discuss and weigh in order for substantial evidence to support her findings. *See Clifton*, 79 F.3d at 1009-10 (stating substantial evidence requires an ALJ discuss "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," and the evidence supporting his decision) (citation omitted). It was not sufficient that ALJ Fellabaum discussed Dr. Granados's 2013 evaluation; she was also required to assign it a weight and explain why that particular weight was appropriate. *Romero v. Colvin*, 1:14-cv-774 CG, 2015 WL 13651149, at *4 (D.N.M. Sept. 3, 2015) (granting remand where ALJ recited provider's specific notes, including functional limitations, but where the ALJ did not explain the weight he gave to the provider's opinion).

ALJ Fellabaum's failure to assign a weight to Dr. Granados's 2013 evaluation is especially troubling in the context of the rest of the decision, wherein she granted little,

limited, some, and no weight at all to all the rest of the psychological medical opinion evidence in the record; and where the two evaluations were conducted more than a year apart. (AR 37-39). *See Finley v. Berryhill*, 1:17-cv-698 SCY, 2019 WL 1118138, at *10 (D.N.M. Mar. 11, 2019) ("[a]n ALJ, who is not a medical provider, must rely on medical providers to determine a claimant's medical condition."); 42 U.S.C.A. § 423(d)(1)(A) (defining disability as lasting "for a continuous period of not less than 12 months"). This leaves the Court unable to follow ALJ Fellabaum's reasoning for the weight granted to every medical opinion she relied upon to determine Mr. Mata's mental RFC, and thus constitutes harmful error. *Guadagnoli*, 2016 WL 9777190, at *6 (finding error where the ALJ's weight analysis left the Court to guess at what medical evidence the ALJ relied on). ALJ Fellabaum's failure to properly weigh Dr. Granados's 2013 evaluation leaves the Court with no guidance to perform a meaningful review of ALJ Fellabaum's analysis of (1) Mr. Mata's mental limitations in the context of his RFC, (2) the proper weight to afford the opinions of the other medical sources on Mr. Mata's mental limitations, or (3) Mr. Mata's own self-reports of his mental limitations.

Therefore, ALJ Fellabaum's failure to weigh Dr. Granados's 2013 evaluation, even merely to explain why she found it unpersuasive, constitutes harmful and reversible error. *Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. Oct. 19, 2006) ("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (citations omitted). The Court thus finds that remand is appropriate. Because the Court finds these reasons alone constitute harmful error mandating remand, the Court will not address the parties' remaining arguments.

**V.     Conclusion**

For the foregoing reasons, the Court finds the ALJ committed harmful legal error when she failed to either weigh Dr. Granados's 2013 evaluation, or discuss why she rejected such evidence. Because the Court finds this is a harmful error, the Court will not address the parties' remaining arguments.

**IT IS THEREFORE ORDERED** that Mr. Mata's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 26), is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE